Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Tuesday, April 15, 2008 2:47:57 PM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOHNNY R. SPROUSE, and | ) | Case No. 03-3134 |
| JAMIE J. SPROUSE | ) | |
| | ) | |
|         Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| CITY OF CLARKSBURG, | ) | |
| | ) | |
|         Plaintiff, | ) | |
| | ) | |
|         v. | ) | Adv. Proc. No. 07-120 |
| | ) | |
| JOHN R. SPROUSE, and | ) | |
| JAMIE J. SPROUSE | ) | |
| | ) | |
|         Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Johnny and Jamie Sprouse (the "Debtors") filed a no-asset, Chapter 7 bankruptcy case on September 3, 2003. Earlier that year, on April 23, 2003, the City of Clarksburg condemned property owned the Debtors as being dilapidated. As a result of this condemnation, the City of Clarksburg razed the property on September 8, 2006, for the cost of $4,900. The City of Clarksburg seeks to collect this amount from the Debtors as a post-petition obligation. The Debtors contend that the demolition cost was a contingent and unliquidated claim as of the date of their bankruptcy petition, and, therefore, is no longer enforceable against them due to the entry of their December 23, 2003 discharge. Both parties move for summary judgment.

### I. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A fact is not "genuinely disputed" unless the factual conflict between the parties requires a trial of the case for resolution. *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) ("If there is any evidence in the record from which a jury could draw a reasonable inference in favor of the non-moving party on a material fact, this Court will find summary judgment is improper.").

## II. BACKGROUND

The facts of this case are not in dispute by the parties. On February 17, 1998, the Debtor acquired a house and lot designated as 165 Park Boulevard, Clarksburg, West Virginia (the "Property"). On April 23, 2003, the City of Clarksburg placed a condemnation placard on the Property stating that it was "dilapidated." The notice of violation, issued the same day, similarly stated: "Vacant dilapidated structure. Front & rear porches deteriorated. Rear foundation bowed in. Holes in exterior siding." With the issuance of the notice of violation, the Debtors were given twenty days to submit a plan of action or else face a citation from the City.

When no immediate action was taken, residents began complaining to the City. On May 19, 2004, in addressing a citizen's complaint, the City noted that the Property had been on a demolition list for "a

year," and that the City had secured the Property. That same day, the City placed another placard on the Property: "Condemnation and Demolition Order." The placard stated that the Property was unfit for human occupancy, was an unsafe structure, and was to be razed.

On February 11, 2005, in response to Congressman Alan B. Mollohan's inquiry on behalf of concerned citizens, the Clarksburg City Manager wrote that the Property "was condemned by the City some time ago and is in need of demolition." That demolition, however, could not take place until the City had sufficient funds to pay for it.

### III. DISCUSSION

The parties dispute when City's claim for demolition services arose. The Debtors believe that the claim was a contingent and unliquidated pre-petition claim, and was therefore discharged in their no-asset, Chapter 7 proceeding. The City asserts that the claim did not arise until the demolition services were performed, which, because it was after the Debtors filed bankruptcy, is not a discharged debt.

What constitutes a "claim" in a bankruptcy proceeding is a matter of federal law. *E.g.*, *Butler v. NationsBank, N.A.*, 58 F.3d 1022, 1029 (4th Cir. 1995) ("[T]o determine when a claim arises for bankruptcy purposes, reference is to be made to federal bankruptcy law rather than to state law."). The term "claim" is specifically defined in the Bankruptcy Code as including "a right to payment, whether or not such right is . . . unliquidated . . . contingent . . . [or] unmatured . . . ." 11 U.S.C. § 101(5). The bankruptcy definition of a "claim" is meant to be read broadly. *E.g.*, *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988) ("Congress intended that the definition of claim in the Code be as broad as possible, noting that 'the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court.'") (citing H. R. Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S. Rep. No. 989, 95th Cong., 2d Sess. 21-22 (1978), *reprinted in* 1978 U.S. CODE Cong. & Adm. News, 5787 at 5807-8 and 6266).

An "unliquidated claim" is "[a] claim in which the amount owed has not been determined." *Black's Law Dictionary* 264 (8th ed. 2004). A "contingent claim" is one "that has not yet accrued and is dependent on some future event that may never happen." *Id.* at 265. An "unmatured claim" is one based on a debt that is not yet due for payment. *Id.* at 264. Therefore, if the City of Clarksburg's claim for

–3–

demolition services was either unliquidated, contingent, or unmatured as of the date of the Debtor's September 3, 2003 Chapter 7 bankruptcy petition, that claim was subject to the Debtor's Chapter 7 discharge.[1]

The City of Clarksburg contends that the outcome of this case is governed by *River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994). In *Rosenfeld*, the Fourth Circuit concluded that periodic assessments of housing cooperative association dues that came due post-petition were not discharged in the debtor's bankruptcy merely because the right to assess those periodic dues was based on a obligation that existed pre-petition. *Id.* at 835. Importantly, the duty to pay the assessments was a "covenant running with the land" – not a contractual obligation – thus, the debtor's "obligation to pay the assessments arose from his continued post-petition ownership of the property and not from a pre-petition contractual obligation." *Id.* at 837.

In this case, the City of Clarksburg's claim is based on the Debtors' violation of the City's ordinances – not a covenant running with the land – and, consequently, *Rosenfeld* is not applicable to this case.

The Debtors claim that the outcome of this case is governed by *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988). In that case, Ms. Grady used a Dalkon Shield manufactured by A.H. Robbins pre-petition, but did not discover that she suffered injuries from the Dalkon Shield until after A.H. Robbins filed its bankruptcy petition. *Id.* at 199. In holding that Ms. Grady's claim for injuries was subject to the bankruptcy filing, the Fourth Circuit determined that Ms. Grady held a pre-petition, "contingent claim":

---

[1] The parties stipulated that the Debtors listed the City of Clarksburg as a creditor in their bankruptcy schedules as being owed a fire service fee. Because the Debtors' case was a "no asset" Chapter 7 filing, unless otherwise excepted under 11 U.S.C. § 523(a), any pre-petition debt owed to the City of Clarksburg for demolition services was discharged even though the particular debt was not scheduled by the Debtors with their petition. *E.g.*, *Watson v. Parker (In re Parker)*, 313 F.3d 1267, 1269 (11th Cir. 2002) ("'Pursuant to § 727(b), the Debtor receives a discharge from all debts that arose before the date of the order for relief under Chapter 7, regardless of whether a proof of claim based on any such debt or liability is filed . . . . [T]he Debtor's Chapter 7 case was a no asset case with no claims bar date set; therefore, [the creditor] had suffered no prejudice because [the creditor] will have an opportunity to file a claim if any assets are discovered. . . . . [The creditor's] claim was discharged by operation of law under § 727(b).").

> We do not believe that there must be a right to the immediate payment of money in the case of a tort or allied breach of warranty or like claim, as present here, when the acts constituting the tort or breach of warranty have occurred prior to the filing of the petition . . . . It is at once apparent that there can be no right to the immediate payment of money on account of a claim, the existence of which depends upon a future uncertain event.

*Id.* at 203.

In this case, the City of Clarksburg issued is condemnation placard and notice of violation on April 23, 2003. The Debtors filed their bankruptcy petition on September 3, 2003. Then, on May 19, 2004, the City of Clarksburg noted that the Property had been on a demolition list for "a year" – which meant that the Property was slated to be demolished before the Debtors filed bankruptcy. The wrongful acts of the Debtors that caused the Property to be razed occurred before they filed bankruptcy; therefore, the City of Clarksburg has a "claim" against the Debtors' bankruptcy estate as that term is defined in 11 U.S.C. § 101(5). That claim was discharged as a personal obligation of the Debtors on December 23, 2003. *See, e.g.*, *In re Caslin*, 97 B.R. 366, 368-69 (Bankr. S.D. Ohio 1989) (rejecting the City of Dayton's assertion that it had no "claim" for purpose of bankruptcy when it sent a "Notice of Nuisance" pre-petition, but did not raze the property until after the debtor filed bankruptcy).

## IV. CONCLUSION

The court will grant summary judgment in favor of the Debtors and enter a declaration that the City of Clarksburg's claim for the costs of demolition services was discharged in the Debtors' bankruptcy proceedings. The court will deny the City of Clarksburg's motion for summary judgment. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.